UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESSE DEAN BALLARD,

No. 10-12518

        Plaintiff,

District Judge Arthur J. Tarnow

v.

Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Jesse Ballard brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits under the Social Security Act. The parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be DENIED and Plaintiff's Motion for Summary Judgment GRANTED, remanding this case for further administrative proceedings pursuant to sentence four of § 405(g), with instructions to consider the June 20, 1997 administrative findings pursuant to Acquiescence Ruling ("AR") 98-4.

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB on February 21, 1995, alleging disability as of October 29, 1993. *Defendant's Exhibit 2* at pg. 4 of 15. Upon denial of the claim, Plaintiff requested an administrative hearing, held April 30, 1997 in Flint, Michigan. *Id.* at pg. 5 of 15. On June 20, 1997, Administrative Law Judge John A. Ransom found that despite the severe impairments of "lower

back pain . . . high blood pressure, diabetes and depression," Plaintiff was able to perform a significant number of sedentary jobs. *Id.* at pgs. 10-11 of 15. Plaintiff filed suit in this Court on November 29, 2000. Case no. 00-75201. On August 17, 2001, the complaint was dismissed. *Id., Dock. #14.*

Plaintiff reapplied for DIB on April 30, 2007, again alleging disability as of October 29, 1993 (Tr. 89). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on August 14, 2009 in Flint, Michigan (Tr. 26). ALJ Joanne Adamczyk presided (Tr. 26). Plaintiff, represented by Mikel Lupisella, testified (Tr. 31-40), as did Plaintiff's brother, Jimmy Ballard (Tr. 40-43) and Vocational Expert ("VE") Mary Williams (Tr. 43-48). On November 17, 2009, ALJ Adamczyk found that Plaintiff did not experience any severe impairments, finding him not disabled at "Step Two" of the administrative sequence through the December 31, 2000 expiration of benefits (Tr. 17, 21). On April 30, 2010, the Appeals Council denied review (Tr. 1-3). Plaintiff filed suit in this Court on June 24, 2010.

## II.    BACKGROUND FACTS

Plaintiff, born October 20, 1957, 52 at the time of the more recent administrative decision, graduated from high school and worked previously as a product handler (Tr. 107, 110). His latest application for benefits alleges disability as a result of "back problems and cholesterol levels" (Tr. 106).

### A.  Plaintiff's Testimony

Plaintiff testified that between his amended onset date of September 11, 2000 and his date last insured ("DLI") of December 31, 2000, he was living with his brother Jimmy (Tr. 32). He reported that during that time, his brother did all of the yard work and shopping and most of the housework (Tr. 32). Plaintiff stated that he experienced uncontrolled diabetes and hypertension,

-2-

adding that his condition obliged him to take multiple 30-minutes naps each day (Tr. 33). He reported further that back pain created nighttime sleep disturbances (Tr. 33).

During the period in question, Plaintiff reported that he could walk up to 20 minutes, sit for 30 and stand for 15 before requiring rest (Tr. 32, 43). He alleged that he was unable to lift even eight pounds and experienced problems climbing stairs (Tr. 35). He opined that he was unable to perform any full time work (Tr. 36).

In response to questioning by his attorney, Plaintiff indicated that physical therapy had not helped his back condition and home exercises had made his condition worse (Tr. 37-38). He reported taking diabetes medication, but denied vision problems or problems with coworkers (Tr. 38). In addition, he testified that he rarely drove as a result of back pain (Tr. 39). Plaintiff denied being treated for depression at that time (Tr. 38).

**B.  Jimmy Ballard's Testimony**

Ballard, concurring with his brother's allegations of limitation for the period in question, indicated that before Plaintiff's 1993 retirement, the two had worked in the shop together (Tr. 42).

**C.  Medical Records[1]**

On September 11, 2000, E. Saeed, M.D. examined Plaintiff's feet, observing no symptoms of diabetes mellitus (Tr. 194). The following week, Dr. Saeed, noting a glucose level averaging 359 for the past three months, referred Plaintiff for dietary counseling (Tr. 193). The following month, Dr. Saeed noted that Plaintiff experienced hypertension as well as elevated glucose levels (Tr. 192).

In May, 2001, a physical examination revealed hypertension (fairly controlled) and hypercholesterolemia (Tr. 191). In July, 2002, Dr. Saeed noted that Plaintiff was "not very well

---

[1]Medical records created after to the LDI of December 31, 2000 are included for background purposes only.

compliant with [diabetes] medication or . . . diet" (Tr. 189). He remarked that Plaintiff had failed

to show up for diabetic classes (Tr. 189).   Plaintiff's diabetes and hypertension were deemed "not

well controlled" (Tr. 188). In August, 2002, ophthalmologist Gary M. Keoleian, M.D. examined

Plaintiff, noting a history of diabetes mellitus (Tr. 139).  Plaintiff reported stable vision (Tr. 139).

Dr. Keoleian found that Plaintiff experienced "mild" nonproliferative diabetic retinopathy (Tr. 139).

In September, 2002, Dr. Saeed again noted that Plaintiff was not compliant with the diabetes diet

or medication (Tr. 187).  In June, 2004, Dr. Saeed noted that Plaintiff was "very noncompliant" with

diabetes medication (Tr. 184).  In October, 2005, ophthalmologist Christopher F. Cukrowski, D.O.

found the presence of macular edema as well as diabetic retinopathy (Tr. 144).  In February, 2006,

Dr. Cukrowski performed laser surgery on the right eye (Tr. 170).  April, 2007 treating records by

Jamal Hammoud, M.D. show that Plaintiff's blood sugar spiked the same month (Tr. 145).  In April,

2007, a foot exam did not show diabetes related complications (Tr. 147).

### D.  VE Testimony

VE Mary Williams classified Plaintiff's former job as a production worker as unskilled at

the medium exertional level (Tr. 44, 138).  Taking into account Plaintiff's age, education, and work

experience, the ALJ posed the following hypothetical question:

> [A]ssume that this hypothetical person could lift up to ten pounds occasionally, and
> less than that frequently, that this person needed the ability to change positions
> approximately every 60 minutes for a few minutes, could not climb ladders, ropes,
> or scaffolds, could occasionally, but not frequently, climb stairs or ramps.  could not
> work around moving machinery or at unprotected heights, and was limited to simple,
> routine, repetitive work that did not involve production quotas or pace work.  Could
> the Claimant have performed his past work or any other work that exists in the
> regional economy?

(Tr. 46).  Based on the hypothetical limitations, the VE found that the individual would be unable

to work at Plaintiff's former job but could perform the sedentary, unskilled work of an information

clerk (2,000 positions in the regional economy); and ticket checker (1,900) (Tr. 46-47).  The VE

testified that her findings were consistent with the Dictionary of Occupational Titles (Tr. 44).  The

VE testified further that if the same individual was unable to lift more than five pounds and was

precluded from the use of foot controls, and "no kneeling, crawling, stooping, or crouching," the

assembler position would be unavailable, but the job findings would be otherwise unchanged (Tr.

47).  The VE testified that if the individual required work breaks each day (in addition lunch and

coffee breaks) *or* missed one day of work each week, all competitive employment would be

precluded (Tr. 47).

### E.   ALJ Adamczyk's November 17, 2009 Decision

At Step One of her determination, ALJ Adamczyk found that Plaintiff had not engaged in

substantial gainful activity between the amended alleged onset date of September 11, 2000 and

December 31, 2000 (Tr. 17). At Step Two (finding Plaintiff's condition of Diabetes mellitus non-

severe) she found that Plaintiff was not disabled due to the absence of any "severe" impairments (Tr.

17).

The ALJ rejected Plaintiff's allegations of disability, observing that  Plaintiff's medical

records for the relevant period "were devoid of any reference to back pain or any objective clinical

findings consistent with disabling back pain" (Tr. 19).   She also noted the treating records post-

dating the DLI did not contain "objective medical findings or even diagnoses consistent with back

pain" (Tr. 19).  She found that although Plaintiff's diabetes worsened "over the recent years to the

point that he had his right leg amputated in 2008," there was "no evidence to indicate that [his]

diabetes was out of control and significantly impacting [his] functioning prior to the DLI" (Tr. 19).

-5-

### III.    STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir.  1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)).  The standard of review is deferential and  "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir.  1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5)

if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).

The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the

Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he

retains the residual functional capacity to perform specific jobs existing in the national economy."

*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

### A.  ALJ Adamczyk's Step Two Determination

Plaintiff argues first that the ALJ erred by finding that his diabetes was "non-severe" at Step

Two of her sequential analysis.  *Plaintiff's Brief* at 6-7, *Dock. #9* (*citing* Tr. 19)*.*  He cites treating

notes created between September 11, 2000 and December 31, 2000 showing that his diabetes was

"not well controlled."  *Id.* at 6 (*citing* Tr. 193).

 "[T]he second stage severity inquiry, properly interpreted, serves the goal of administrative

efficiency by allowing the Secretary to screen out totally groundless claims." *Farris v. Secretary of*

*HHS,* 773 F.2d 85, 89 (6th Cir.1985). An impairment can be considered "not severe ... only if the

impairment is a 'slight abnormality which has such a minimal effect on the individual that it would

not be expected to interfere with the individual's ability to work, irrespective of age, education and

work experience.' " *Id.,* 773 F.2d at 90 ( *citing Brady v. Heckler,* 724 F.2d 914, 920 (11th

Cir.1984)). 20 CFR § 416.921(a) defines a non-severe impairment as one that does not "significantly

limit [the] physical or mental ability to do basic work activities." The same regulation defines "basic

work activities" as "understanding, carrying out, and remembering simple instructions; use of

judgment; responding appropriately to supervision, co-workers and usual work situations; and

dealing with changes in a routine work setting." *Id.*

The ALJ's conclusion that Plaintiff's diabetes was non-severe falls easily within the "zone of choice" generally accorded administrative fact finders.   *Mullen, supra,*  800 F.2d at 545. Treating notes from September and October, 2000 show a diagnosis of poorly controlled diabetes mellitus but do not suggest that the condition created functional limitations.  September 11, 2000 treating show that Plaintiff's feet showed no diabetes related conditions (Tr. 194).  To be sure, Plaintiff's glucose levels for the same period were disturbingly high (Tr. 193). However, treating notes do not state that he was then experiencing the diabetes related complications (vision problems and a limb amputation) that arose in more recent years.  Likewise, while Plaintiff alleged that back pain and hypertension conditions (predating the DLI) obliged him to nap multiple times each day, the ALJ's finding that his claims were not entirely credible is well supported and explained (Tr. 18-19).   Standing alone, substantial evidence supports the ALJ's finding that Plaintiff did not experience severe impairments.   However, as discussed below, the AL's failure to give preclusive effect to a previous administrative finding of Step Two severe impairments taints that finding.

### B.  Acquiescence Ruling 98-4

Plaintiff also argues that ALJ Adamczyk erred by failing to give preclusive effect to the ALJ Ransom's 1997 findings. *Plaintiff's Brief* at 7-8 (citing*Drummond v. Commissioner of Social Security,* 126 F.3d 837 (6th Cir. 1997)); Acquiescence Ruling ("AR") 98-4.  Consistent with this argument, Defendant's exhibits show (in contrast to ALJ Adamczyk's Step Two findings) that ALJ Ransom previously found the severe impairments of  lower back pain, hypertension, diabetes, and depression. *Defendant's Exhibit 2* at pgs. 10-11 of 15.  Defendant concedes that the ALJ erred by failing to give preclusive effect to ALJ Ransom's 1997 Step Two findings but argues the error is harmless given that ALJ Adamczyk would also be bound by ALJ Ransom's ultimate Step Five conclusion that Plaintiff was not disabled.  *Defendant's Brief* at 6, *Dock. #14.*

AR 98-4, codifying *Drummond v. Commissioner of Social Security,* 126 F.3d 837 (6th Cir. 1997) provides as follows:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in law, regulations, or rulings affecting the finding or method for arriving at the finding.

AR 98-4(6).

ALJ Adamczyk's failure to apply the correct evidentiary standard in making her Step Two determination mandates remand. Defendant, noting that the earlier Step Five decision found Plaintiff non-disabled, argues that remand on the basis of the Step Two discrepancies between the two decisions would be futile because of the preclusive effect of ALJ Ransom's ultimate non-disability finding. However, Defendant ignores the language of the Ruling that permits the newer adjudicator to deviate from the earlier findings in the face of "new and material" evidence. *Id.* In making this argument, Defendant erroneously assumes that ALJ Adamczyk would have accepted ALJ Ransom's finding "whole hog" rather than modifying the earlier findings with "new and material" evidence.

For example, assuming that the ALJ adopted ALJ Ransom's Step Two findings of the "severe impairments" of back problems, hypertension, diabetes, and depression, it cannot be determined whether she would have found that "new and material" evidence justified a modification of ALJ Ransom's findings at Steps Three, Four, and Five of the sequential analysis. Further, although ALJ Adamczyk mentions the earlier opinion in passing during the administrative hearing, her decision gives no indication that the she applied the requirements of AR 98-4 to evidence - either as to the preclusive effect of the earlier Step Two finding or why "new and material" records permitted a different finding. Aside from the fact that the ALJ did not perform the required AR 98-4 analysis,

it is also unclear whether she was even aware of the contents of the 1997 opinion.   *See Lowery v. Commissioner, Social Sec. Administration,* 55 Fed.Appx. 333, 339, WL 236419, 5 (6th Cir.2003) ( *quoting Diaz v. Chater,* 55 F.3d 300, 306 (7th Cir.1995) (An ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning").

Admittedly, Plaintiff has not presented an overabundance of new records from the relevant period.  Further, it is possible that if ALJ Adamczyk had conducted an AR 98-4 analysis, she would simply have found that "new and material" evidence supported her Step Two finding.  However,  this is mere speculation. The Court cannot uphold the Commissioner's decision based on conjecture that the ALJ would have ruled the same way  had she applied the correct evidentiary standards.  "Remand for further proceedings is appropriate in cases in which the Commissioner has failed to provide a full and  fair  hearing,  to  make  explicit  findings,  or  to  have  correctly  applied  the  application  and regulations."  *Manago v. Barnhart* 321 F.Supp.2d 559, 568 (E.D.N.Y.,2004); *Johnson v. Bowen* 817 F.2d 983, 986 (2nd Cir. 1987)(Remand ordered "to ensure that the correct legal principles are applied to determination of [the] disability claim); *Reynolds v. Commissioner Of Social Security,* 2011 WL 1228165, *2 (6th Cir. April 1, 2011)(citing *Youghiogheny & Ohio Coal Co. v. Webb,* 49 F.3d 244, 246 (6th Cir.1995))(application of "an erroneous legal standard" grounds for remand). As such,  a remand for reconsideration of the evidence pursuant to AR 98-4 is appropriate. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir.1994).

## VI.    CONCLUSION

I recommend that Defendant's Motion for Summary Judgment be DENIED and Plaintiff's Motion  for  Summary  Judgment  GRANTED,  remanding  this  case  for  further  administrative proceedings pursuant to sentence four of § 405(g), with instructions to consider the June 20, 1997 administrative findings pursuant to Acquiescence Ruling ("AR") 98-4.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: June 24, 2011

_____

**CERTIFICATE OF SERVICE**

I hereby certify on June 24, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on June 24, 2011: **None.**

s/Michael E. Lang
Deputy Clerk to
Magistrate Judge R. Steven Whalen
(313) 234-5217

-11-